All right, we will call the third case of the day which is number 22, 17, 22. Adriadna Roman Baro v. Lake County Federation of Teachers, Local 504. Okay, thank you. Mr. Schwab, hello. Good morning, your honors. May it please the court. My name is Jeffrey Schwab and I represent the plaintiff, Adriadna Ramon Baro. The decision of the district court must be reversed because Janus requires that government employers withhold money, any money, on behalf of public sector unions. Informed consent is necessary because the procedures by which the union obtains membership signatures and by which the employer withholds union dues are not simply a matter of private contract law between the employee and the union. Rather, the state has created a procedural system toward getting employees to sign and pay the union by giving unions privileges. The union membership, Mr. Schwab, the union membership agreement stated that it was a So, what more evidence would one need of affirmative consent to join the union and what would, in your view, a knowing waiver look like? Give me specific language that you think would be required because I think that would be helpful. Yes, your honor. Well, to answer your first question, the reason that in this case the did not constitute valid consent is because the language that the Janus case provides, when after it held that employers must not withhold union dues from employees unless they provide affirmative consent, the court says It was referring to non-members, correct? Yes, but at the time Ms. Ramon Baro was signing the union membership card, she's a non-member. So, it would apply to her and it would really apply to anybody, anybody who Right, so I understand that's your position. Could you answer Judge Roebner's question? Sure. So, the language is, neither an agency fee nor any other payment to the union, I'm sorry, by agreeing to pay, non-members are waiving their First Amendment rights and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by clear and non-members. Yes, but Ms. Ramon Baro was a non-member when she signed the agreement. But how would that make sense to have language in a contract where you're becoming a member that tells you non-members have this right? The reason is because this isn't just a case about a private contract. So, let me try this again. I think this is what Judge Roebner was getting at as well. A school district is presented with a signed card from somebody who says, I'm joining the union and I agree to dues withdrawal. Is there an obligation on the part, in your view, of the school district to insist on further evidence? Yes, the school district has to have clear and compelling evidence that she knew of her right to not pay the union and that she intended to waive it. Have any other courts interpreted Janice the way you're asking it be applied to people who are signing up to become union members? This is the first case, in my understanding, that is about a plaintiff who joined a union or who signed a union membership card after Janice applied. All the other cases, this court's case in Bennett, for example, the Belgao case in the Ninth Circuit, and the Third Circuit's Fisher case. So, you want us to be the first court to read Janice to say that a school district can't just simply accept a union membership, please withdraw dues from my paycheck. But it has to, look, would a videotaped statement, a video Miranda statement do the trick, do you think? Well, lots of things could do the trick. I think that certainly would be clear and compelling evidence that a member or that an employee knew that they had a right not to join the union or were waiving that. But what's not even, what they could, the most simple thing that they could do is put it in the union membership card. And the union membership card does not say that you have a right to not join the union and to not pay the union, and that by signing the union membership card, you're waiving that right. But if it did say, that would be very clear and compelling evidence. So you think they have to include in there also you have a right not to join the union, not just that if you join, you have to pay dues. Those are two separate issues. That's correct. And the relevant issue in Janus is the paying. But I think that by saying you have a right not to join and not pay, I think that makes it more clear that what we're saying is by not joining the union, you don't have to pay. And I think that's the right that Janus found and that needs to be made known or needs to be waived. Under your theory, would just form language in the card be sufficient, or would you need some affirmative check off, like the video statement? I understand I don't have to join the union, but I really want to join anyway. I think that form language would be a significant improvement on what the current system is. And I would say that in almost every case, that would be enough. There might be a case, and for example, there are some cases in the Ninth Circuit now, or that the Ninth Circuit decided where there was an issue of forgery. And in the case where the question, the factual question is whether or not the plaintiff actually signed the document, then that language obviously wouldn't be enough. But those would be the exceptions, I think. And I think for 99 percent of the cases, it would be enough. And the fact that the union isn't providing that now, I think, is significant. And the union could have been providing that all along. As far as I'm aware, there are no union agreements in the country that explicitly say that you don't have to pay money if you're a non-member when you sign the union card. And I think that we can also look... Go ahead. But I think we can also look to state law to show why that's necessary. For one, the union is an exclusive bargaining agent. That's a right that no other private entity is ever given by the government. And it affords them a lot of privileges, including the privilege to speak on behalf of non-members. And the main, I think, issue here is that by state law, we have the union's dues being taken out by the employer. They don't have a choice. It doesn't matter whether or not you have a signed agreement. It's entirely because the state has provided a scheme or a system for withholding those dues. And that's the relevant state action, I think, in this case. What relief is Ms. Barrow seeking at this point? A declaratory relief that says that going forward that these union dues... And also, she has damages that... What damages? The amount of money that they withheld from her. Didn't they refund that? She refused it. And the issue on mootness was raised in the district court. The district court found it wasn't moot. I believe the briefing, if you can correct me, of the defendants say that they're not really contesting that. But yes, there's still damages. Why did she refuse a refund if that was... Well, it's important to her. In other cases, dealing with these post-Janus cases, the union, once a plaintiff has filed a lawsuit, tries to get the case mooted out by paying money to the plaintiff. It was more than just her dues, too. It was dues plus $500. That's what they offer her, yes. Okay. I see them in my rebuttal time, so unless there's other questions, I'll reserve the remaining time. That's fine.  Hello, Mr. Shiffrin. Good morning. Good morning, Your Honors, and may it please the court. This case is controlled by this court's decision in Bennett, which was issued just 18 months ago. In Bennett, this court considered the very theory and question that's being presented here, which is whether or not the Supreme Court's decision in Janus imposed a new waiver requirement for employees who wish to become members of the union. And this court stated categorically in Janus that that was not the case. The court didn't say, oh, well, it depends on whether or not the card was signed before Janus or after Janus. It said, no, there's no waiver requirement. And in that respect, it agreed with what was then the Third Circuit and the Ninth Circuit, and is now also the Tenth Circuit, and every other court that has considered that same question. All of them have spoken with a single voice and have said, no, Janus does not impose a waiver requirement, period. Just out of, I just want to ask a question out of curiosity, but the union have required Ms. Vermont-Barrow to continue to pay dues until the end of the contract term? The card in this case said it would be revocable after one year, which is a typical of a conventional for union membership agreements, particularly in the education space where teachers are employed generally for one year, and there's budgeting based on one year. And I believe that the state law, the IELRA, set some parameters for what would be a reasonable contract in terms of the length that a dues obligation can be imposed. Whether or not it's, you could have one longer than that, I think would be a question perhaps of state law, but not one of First Amendment law. Does the union have any process, I don't know, kind of the second thought process that we sometimes have with loan applications and so on where somebody can come in a few days later and say, I made a mistake, I'd like to take back my membership? At the time, this union did not have that set up. I know there's some unions certainly do that, and it's within the discretion of the union, of course, whether to hold a particular individual to their contractual obligations. And here, after this case was filed, the union was willing to refund those dues. I mean, this wasn't a case where the union insisted after a couple missteps, the union got to the point of, we're going to refund your money here, and other unions have made that judgment as well. But there's no constitutional requirement that these membership agreements be written in a particular way, rather that the terms of them are a matter of state contract. And you can look no further than the Cohen case that's relied on in Bennett and in all of these other cases by other circuits make that point well. I'll say as well that the court in Bennett rejected, very specifically considered this argument from this being pressed by a plaintiff here, whether or not there was a waiver requirement, a heightened waiver requirement, and rejected it. And under this court's stare decisis jurisprudence, you cannot revisit that conclusion unless there's been some intervening change in law. And nor, as I said- Do you know if Ms. Barrow was told at that original meeting that union membership was voluntary? There's no allegation one way or the other as to what was said at that meeting. And I think that's significant. I mean, the plaintiff attempts to distinguish this case from Bennett by saying somehow the card was not voluntary. But the language of the card was clear, as Judge Robner pointed out, that it was voluntary. All plaintiff is relying on for the idea that it's not voluntary is her subjective, unexpressed, private misunderstanding of what the language of the card meant and what she was being asked to do. And that's not a basis under any ordinary contract principle for declaring a contract to be non-voluntary or somehow unlawfully induced. To the contrary, people are held to the promises that they make in contracts. There's no allegation in this case of duress, of misrepresentation by the union, or anything that would suggest that somehow this was a case of unlawful inducement to enter into an agreement under ordinary contract principles. So for all of those reasons that this case is controlled by Bennett, we'd ask that you affirm the judgment below. But I'll also address the state action argument. That's an independent round that this court can find as a reason to affirm the judgment below. The courts in this area, and I'm thinking of the Belgao case and the Hokeman case and a number of other courts, have held that it is not state action for a public employer to follow the instructions of a private dues authorization signed by an employee. That the private agreement between, and the reason for that being that that dues authorization is a private agreement between the union and the employee, and that's the source of the right for the dues deduction. It is not some state-created right. The 8th Circuit in Hokeman was clear about that. And that's consistent with this court's decision in Hallinan, where the court found that there was no state action where a public employer filed the instructions of a union to not withhold dues, but instead withhold agency fees from two members who it had expelled from the union. The court found that implementing those private decisions is not state action. This case is different in that respect from the Janus case. And I wanted to correct something that Mr. Schwab said. The statute, the amendments to the IELRA, do require there to be a signed authorization in order for there to be an obligation of the state to withhold dues. The second sentence of 11.1a says that employers shall make deductions in accordance with the terms of an employee's written authorization and shall be paid to the exclusive representative. So it's not the case that there's a some procedural scheme that's requiring public employers to withhold dues. Rather, it's the enforcement of the terms of the private agreement. And that's not state action under this court's precedent in Hallinan or as these other courts have recognized. And with that, I'll see if there's any additional questions. If not, we ask for an affirmance. Thank you very much. Thank you very much. Okay. Um, in response to the, I'm sorry, no, I'm sorry. But Mr. Schwab asked for two minutes. Please give him his two minutes. Thank you, Your Honor. Um, in response to the argument that this case is controlled by Bennett, Bennett found that it was important. In fact, it was the vital holding in Bennett that Ms. Bennett didn't dispute that she voluntarily joined the union. In this case, Ms. Ramon Barrow does dispute that she voluntarily joined the union. She thought she was required to join. And then within a week of, after joining, tried to get out of the union when she realized she didn't have to join. So, so Bennett, Bennett really focuses on the fact that she, that Ms. Bennett couldn't renege on her agreement to pay money to the union after Janus came down and changed the law. Here, that's not the case. Um, and then in terms of the argument that there's no constitutional requirement in Janus, I don't think that's the decision that this court decided in Bennett. That might be the decision in Belgao. But I think Belgao was wrong when, in that instance, because it contradicts the Janus language that says by agreeing to pay, non-members are waiving their rights. If there's no constitutional waiver requirement in this case, then the factual issues of whether Ms. Ramon Barrow was told or not that she had to join the union doesn't matter. The argument would be the same by the, uh, by the union if Ms. Ramon Barrow was told she had to join the union. Or, alternatively, if she was told she, if she didn't join the union, that she'd have to pay agency fees. It would be the same argument that there's no constitutional waiver standards. And that's a huge problem because it incentivizes the union who has a lot power under the statute, including the right to take union dues, uh, that no other, the right to have the employer withhold union dues that no other private entities get, the power to, over, uh, to basically mislead, uh, an employee, uh, into joining the union. And so, with that, my time's up. And unless there's questions, I will rest my case. And we thank you both. And case will be taken under advisement. Thank you so much.